UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BABETTE R.,[1]

      **Plaintiff,**

v.

      Case No. 3:21-cv-19342
      Magistrate Judge Norah McCann King

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Babette R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.**    **PROCEDURAL HISTORY**

On March 26, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since February 28, 2019. R. 109, 123, 199–05. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 141–45, 147–49. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 150–51. ALJ Kenneth Ayers held a hearing on December 11, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38–71. In a decision dated January 26, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security from February 28, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–32. That decision became final when the Appeals Council declined review on September 2, 2021. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 10, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[3] On February 3, 2022, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 53 years old on her alleged disability onset date. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 28, 2019, her alleged disability onset date and the date of the decision. R. 21.

At step two, the ALJ found that Plaintiff's depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD") were severe impairments. R. 22. The ALJ also found that Plaintiff's diagnosed curvature of the spine (c-shaped scoliosis) and restless legs syndrome were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22–24.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with various non-exertional limitations. R. 24–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a clerk, typist. R. 30.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a counter supply worker, an order picker, a dishwasher, a cafeteria attendant, and a cleaner–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 30–31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 28, 2019, her alleged disability onset date, through the date of the decision. R. 31.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision be

reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

**IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On October 8, 2020, Valerie Magrino, APN, who had treated Plaintiff since March 23, 2018, R. 627, completed a five-page, fill-in-the-blank, and check-the-box questionnaire entitled, "Treatment Source Statement – Psychological Conditions." R. 627–31. Nurse Magrino diagnosed Plaintiff with panic disorder, attention deficit disorder ("ADHD"), and bipolar disorder severe, and described Plaintiff's prognosis as "fair[,]" explaining that Plaintiff "cannot multi-task, or work in a too-busy environment with over-stimulation." R. 627. According to Nurse Magrino, Plaintiff's symptoms and limitations had first appeared "[b]efore [Plaintiff] had visits with me in March 2018" and were expected to last for at least 12 months. *Id*. Nurse Magrino also indicated that Plaintiff experienced the following signs and symptoms associated with her diagnoses: disturbance of mood accompanied by full or partial depressive syndrome; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, and anxiety that is limited to the presence of a particular object or situation (specific phobia); or to resisting the obsessions or compulsions in obsessive compulsive disorders. *Id*. Nurse Magrino specifically indicated that Plaintiff experienced anhedonia or pervasive loss of interest in almost all activities; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; decreased need for sleep; easy

distractibility; motor tension; apprehensive expectation; and vigilance and scanning. R. 628. Asked to identify clinical findings demonstrating the severity of Plaintiff's mental impairments and symptoms, Nurse Magrino responded: "At home she is fine, when she is under pressure or works too hard she gets increasingly anxious[.] She will go into depressions at times if not medicated properly." *Id*. Nurse Magrino assessed Plaintiff's ability to perform in certain areas using the following scale: "No Limitation" (meaning "that the effects of the mental disorder do not prevent the individual from functioning independently, appropriately, effectively, and on a sustained basis, in a given area"); "Mildly Limited" (meaning "that the individual's ability to function independently, appropriately, effectively, and on a sustained basis is slightly limited"); "Moderately Limited" (meaning "that the individual's ability to function independently, appropriately, effectively, and on a sustained basis is fair"); "Markedly Limited" (meaning "that the individual's ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited"); and "Extremely Limited" (meaning "that the individual is unable to function ln this area independently, appropriately, effectively, and on a sustained basis"). R. 629. Using that scale, Nurse Magrino indicated that Plaintiff was "mildly limited" in her ability to understand, remember, or apply information and in her ability to interact with others because Plaintiff "[o]nly has difficulties when working[.]" *Id*. Plaintiff was "moderately limited" in her ability to concentrate, persist, or maintain pace because Plaintiff said that she "cannot multi-task[.]" *Id*. Plaintiff was "mildly limited" in her ability to adapt or management herself and Plaintiff's short-term memory and long-term memory were "mildly" impaired. R. 629–30. Plaintiff was not limited in her ability to remember locations and work-like procedures, understand, and carry out very short and simple instructions, and understand and carry out detailed but uninvolved written or oral instructions. R. 630. Nurse Magrino opined that Plaintiff

9

was able to maintain attention and concentration for less than two hours before needing redirection or requiring a break. *Id*. According to Nurse Magrino, Plaintiff was able to maintain regular attendance and be punctual within customary tolerances but Plaintiff required enhanced supervision and praise and positive reinforcement from supervisors in order to handle stress and her emotions. *Id*. Asked whether Plaintiff was able to work appropriately with the general public, co-workers, and supervisors, Nurse Magrino checked the boxes marked "Yes" and "Sometimes, but not consistently[,]" explaining that it "depends on environment & circumstances" but that Plaintiff is "[f]ine with respectful boss, if someone is 'too demanding,' or not[.]" R. 630–31. Plaintiff could maintain socially appropriate behavior. R. 631. Nurse Magrino checked the box marked "Sometimes, but not consistently" when asked whether Plaintiff had the ability to respond appropriately to changes in work settings[,]" explaining that "[f]ast pace & over-stimulation affect her[.]" *Id*. Plaintiff was likely to be "off task"—defined as the amount of a typical workday that Plaintiff's symptoms would likely be severe enough to interfere with attention and concentration needed to perform even simple work related tasks—15% of a typical workday. *Id*. Nurse Magrino also opined that, if Plaintiff were trying to work full time, she would likely be absent from work 4 days per month as a result of her impairments and/or treatment. *Id*.

**V.      DISCUSSION**

Plaintiff argues that the ALJ erred in considering multiple medical opinions including, *inter alia*, Nurse Magrino's opinion. *Plaintiff's Brief*, ECF No. 17, pp. 20–32. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

---

[4] As previously noted, Plaintiff's claim was filed on March 26, 2019.

11

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b).

In the case presently before the Court, the ALJ found at step four of the sequential evaluation process that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "The claimant can [sic] is limited to simple, routine and repetitive tasks and making simple work-related decisions. The claimant can interact with supervisors occasionally, interact with coworkers occasionally but should have no work in tandem, and can have no more than brief, superficial interaction with the public." R. 24.

In reaching this determination, the ALJ found, *inter alia*, that Nurse Magrino's opinion was "unpersuasive[,]" reasoning as follows:

> The undersigned also considered another medical source statement by Valerie Margino [sic] APN.[5] Ms. Margino [sic] opined that the claimant was mildly limited in the ability to understand, remember or apply information, in her understanding and memory, in the ability to interact with others, and in the ability to adapt or manage oneself. Moreover, she opined that the claimant had [sic] was moderately limited in the ability to concentrate, persist or maintain pace. She opined that the claimant would have no limitations in remembering locations and work-like procedures, no limitations in understanding and carrying out very short and simple instructions, and no limitation in understanding and carrying out detailed but uninvolved written or oral instructions. She opined the claimant could maintain attention and concentration for less than two hours before needing redirection or requiring a break. She opined that the claimant would be able to maintain regular attendance and be punctual within customary tolerance but would require enhanced supervision. She opined that the claimant was able to somewhat but not consistently work appropriately with supervisors, coworkers and the general public and needed positive reinforcement from the supervisors. She opined that the claimant had the ability to maintain socially appropriate behavior but could sometimes, but not consistently respond appropriately to changes in work settings. She opined further that the claimant would be off-task 15% of the workday and would be absent four days per month (Exhibit 13F). The undersigned finds this opinion unpersuasive. Ms. Margino's [sic] opinion was generally supported by her explanation that the claimant reported that she could not multi-task, she could not work in "too-busy" environments with over stimulation, and only had difficulties when she was working (Exhibit 13F/2-4). However, this opinion was inconsistent with the medical evidence, as mentioned above, in the medical consistency analysis for Ms. Mindell's opinion[6] (Exhibits 5F/10, 18; 6F/4; 10F/3; 11F/2-4 7, 9-10, 14-15; 16F/5; 18F/5, 9). Therefore, the undersigned finds this opinion unpersuasive.

---

[5] The ALJ considered another treating source statement of Nurse Magrino regarding Plaintiff's physical conditions, R. 27, 622–25, which the Court does not discuss in this decision.

[6] The ALJ considered the referenced opinion of Margaret Mindell, LCSW, as follows:

> Moreover, the undersigned considered the medical source statement of Margaret Mindell LCSW. Ms. Mindell opined that the claimant's understanding and memory was not limited but that her sustained concentration and persistence, social interaction and adaptation were limited. She opined that the claimant would be able to manage benefits in her own interest (Exhibit 10F). The undersigned finds this opinion generally persuasive. Ms. Mindell's opinion was generally supported by her explanation that the claimant had issues with panic attacks and problems with mental illness (Exhibit 10F/5). *In addition her opinion was generally consistent with the medical evidence that showed the claimant had issues with PTSD, depression and anxiety but also had a normal and/or near euthymic mood, was*

13

R. 28.

Plaintiff challenges the ALJ's characterization of Nurse Magrino's opinion as inconsistent with the medical record and complains that the ALJ selectively relied on portions of the record to support his assessment while ignoring other portions of the record—including evidence within the same office visit. *Plaintiff's Brief*, ECF No. 17, pp. 27-30 (citations omitted). Plaintiff therefore argues that substantial evidence does not support the ALJ's finding that Nurse Magrino's opinion is unpersuasive; Plaintiff also contends that this error was not harmless. *Id*. at 31–32. In response, the Acting Commissioner contends that the ALJ properly considered this opinion in accordance with the applicable regulations and argues that Plaintiff's challenge amounts to a mere improper request that this Court re-weigh the evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, pp. 11–16.

The Court is not persuaded that the ALJ properly considered the consistency factor when analyzing Nurse Magrino's opinion. The ALJ cited to record evidence to support his finding that this opinion was inconsistent with other evidence; however, in doing so, the ALJ credited some information but ignored other information without explanation. R. 28 (citing Exhibits 5F/10, 18; 6F/4; 10F/3; 11F/2-4 7, 9-10, 14-15; 16F/5; 18F/5, 9). For example, the ALJ cited a March 2019

---

*alert and oriented, and exhibited calm behavior* (Exhibits 5F/10, 18; 6F/4; 10F/3; 11F/2-4 7, 9-10, 14-15; 16F/5; 18F/5, 9). However, based on the aforementioned evidence, the undersigned finds that moderate limitation in all four B criteria, as well as, limiting the claimant to simple, routine and repetitive tasks, simple work-related decisions and limiting her interactions with others was sufficient. In addition, the undersigned notes that Ms. Mindell opined on an issue reserved to the Commissioner, which is inherently neither valuable nor persuasive. As such, the undersigned only finds this opinion generally persuasive.

R. 27–28 (emphasis added).

assessment by Plaintiff's treating physician, Sonal Batra, M.D., *id*. (citing, *inter alia*, 5F/10, R. 501), at which Dr. Batra stated that Plaintiff "does not appear to pose an acute threat to self or others at this time. There is no acute need for hospitalization." R. 501. However, this treating physician's assessment also reflects that Dr. Batra considered Plaintiff's condition severe enough to warrant admission to an intensive outpatient mental health treatment program, which lasted approximately two months. *Id*. ("Level of Care: Acute partial hospital (APH)/Partial hospital program (PHP)"); *see also* R. 541 (reflecting Dr. Batra's note of tentative discharge date of May 7, 2019), 547 (reflecting program start date of March 5, 2019, and program end date of May 7, 2019). The ALJ also cited a mental status examination performed by Ms. Mindell that reflects that Plaintiff denied suicidal ideations, had no homicidal ideations, "appears to be stabilizing with current medication regime[,]" and that Plaintiff's judgment "improved with medication." R. 28 (citing Exhibit 10F/3, R. 598); R. 598. However, Ms. Mindell's note also reflects, *inter alia*, that Plaintiff's mood/affect "fluctuates, depression, anxiety, & PTSD"; her appearance and behavior was "disheveled at times"; her speech was pressured; and she reported difficulty with concentration and memory. R. 598. The ALJ also cited, R. 28 (citing, *inter alia*, Exhibit 16F/5, R. 671), an October 2020 treatment note from Ms. Mindell, which reflects that Plaintiff is not at risk for self-harm, but which also reflects, *inter alia*, that Plaintiff "reported that COVID benefits her in some ways (PTSD) & she doesn't have to go out to experience panic attacks." R. 671. Ms. Mindell also noted om that document that Plaintiff "verbalized thoughts of catastrophic outcomes[.]" The ALJ further relied, R. 27 (citing, *inter alia*, Exhibit 18F/5, R. 683), on a December 2020 progress note from Nurse Magrino, which indicated that Plaintiff had no hallucinations or delusions; she was neatly groomed; her behavior was calm; her affect was congruent; she denied suicidal and homicidal thoughts; she had fair insight and judgment; and

15

she was alert and oriented to person, place, situation, and date. R. 683. However, this note also indicates that Plaintiff's mood was anxious and that her other symptoms included cognitive distortions regarding self and lack of energy; and that she reported that she is "overwhelmed with COVID—dealing with kids, and husband always being home." *Id*. In addition, Nurse Magrino noted that Plaintiff "said medications are working, [but] just harder mentally the longer this quarantine goes on." *Id*. The Court cannot conclude that substantial evidence supports the ALJ's consideration of Nurse Magrino's opinion where the ALJ selectively cited treatment notes that supported his assessment but ignored contrary portions without explanation. *See Quinn v. Kijakazi*, No. 3:20-CV-01698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022) ("A selective approach to the evidence does not constitute substantial evidence upon which an ALJ may reasonably rely to deny benefits.") (citations omitted); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *cf. Roberts v. Kijakazi*, No. CV 21-14-CJB, 2022 WL 17403479, at *11 (D. Del. Dec. 2, 2022) ("[A]lthough the ALJ cited to the above-referenced positive therapeutic findings . . . , the ALJ failed to substantively discuss the many negative clinical observations found in those same records" and, "[i]n failing to substantively engage with the above-referenced negative clinical observations and findings, the ALJ rendered it unclear whether she considered any such evidence when determining Roberts' RFC (and if so, why she

discounted it)"); *DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.").

The Court cannot conclude that the ALJ's error in this regard is harmless. As set forth above, Nurse Magrino's opinion was critical to Plaintiff's claims, particularly where that provider found greater limitations than those contained in the RFC found by the ALJ. R. 24, 28, 627–31. For example, Nurse Magrino found that Plaintiff, *inter alia*, could sometimes, but not consistently, respond to appropriately to changes in work settings; that Plaintiff was likely to be off task 15% of a typical workday; and that Plaintiff was likely to be absent from work four days per month. R. 631.

These opined limitations take on greater significance when one considers that the vocational expert testified, *inter alia*, that there would be no full-time, competitive, unskilled employment available to a hypothetical individual who would be off task 15% in an eight-hour workday, and who would be absent two days or more per month. R. 66–67.

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[7] Moreover, remand is appropriate even if, upon further examination of Nurse Magrino's opinion and the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL

---

[7] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Nurse Magrino's opinion and the RFC determination, the Court does not consider those claims. However, the Court notes that the ALJ relied on many of the same citations when finding the opinions of Sonal Batra, M.D. and Margaret Mindell, LCSW, inconsistent with the medical evidence and, ultimately, unpersuasive. R. 27–29. On remand, it would be helpful if the ALJ clarified how he considered the consistency of these opinions when determining their persuasive value.

5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 27, 2023                                  *s/Norah McCann King*
                                                                              NORAH McCANN KING
                                                                  UNITED STATES MAGISTRATE JUDGE